UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| DENNIS MCCABE, | ) | 3:09-cv-00244-LRH (WGC) |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF U.S. MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| JIM GIBBONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court are Plaintiff's Motion for Preliminary Injunction (Doc. #75)[1] and Motion for Temporary Restraining Order (Doc. # 76).[2] Defendants opposed. (Doc. # 91.) Plaintiff did not file a reply. After a thorough review, the court recommends that Plaintiff's motions be denied.

**I. BACKGROUND**

At all relevant times, Plaintiff Dennis McCabe (Plaintiff) was in custody of the Nevada Department of Corrections (NDOC). (Pl.'s Am. Compl. (Doc. # 25) 1.) The allegations giving rise to this action took place while he was housed at Ely State Prison (ESP). (*Id*.) Plaintiff, a *pro se* prisoner, brings this action pursuant to 42 U.S.C. § 1983. (*Id*.) Defendants are Robert Bannister, Joseph Brackbill, Catherine Cortez-Masto, E.K. McDaniel, Jim Gibbons, Erik Lyons,

---
[1] Refers to court's docket number.

[2] These documents are identical, but were docketed separately by the Clerk's office.

1  Gregory Martin[3], Ross Miller, Stephen Saunders, and Howard Skolnik. (*See* Doc. # 25, Doc.
2  # 51.)[4]

3  On screening, the court found that Plaintiff sets forth viable claims in Counts I, II, and
4  III. (*See* Doc. # 25, Doc. # 43, and Doc. # 51.)

5  In Count I, the court found that Plaintiff states a viable claim for violation of the Eighth
6  Amendment as a result of deliberate indifference to his serious medical needs. (Doc. # 43 at 3-
7  6.) He claims that it has been a matter of medical record for approximately eight and one-half
8  years that he requires surgery to correct his spinal stenosis. (Doc. # 25 at 20.) He asserts that
9  this case and those of other inmates were investigated in 2008, and that the investigation made
10 prison officials aware of his condition and the inadequate medical treatment he has received.
11 (*Id.* at 20-22.) Plaintiff alleges he has received no treatment for his condition, despite the fact
12 that surgery has been recommended on at least two occasions. (*Id.* at 6-7.) Plaintiff claims that
13 his condition has deteriorated throughout the years, causing his symptoms to worsen to the
14 point that he has no feeling in either leg or in his left foot. (*Id.* at 7.) He claims that he
15 experiences bladder and bowel incontinence sporadically, and often falls down, causing further
16 injury. (*Id.* at 5-7.) Plaintiff claims that prison officials are aware of his condition and have
17 knowingly and deliberately refused treatment, which has inflicted ongoing pain and suffering.
18 (*Id.* at 9-10.) This claim is asserted against Howard Skolnik, Robert Bannister, Joseph
19 Brackbill, E.K. McDaniel, Jim Gibbons, Ross Miller, Gregory Martin, and Catherine Cortez
20 Masto. (*See* Doc. # 43, Doc. # 51.)

21 In Count II, the court found that Plaintiff states a viable claim for violation of the Eighth
22 Amendment as a result of deliberate indifference to his serious medical needs by Defendant
23 Gregory Martin. (Doc. # 43 at 6.) Plaintiff alleges that on September 11, 2008, Defendant

---

[3] Wrongly named by Plaintiff as Martin Gregory. (*See* Doc. # 91 at n. 2.)

[4] Supervisory defendants Skolnik, Bannister, Brackbill, McDaniel, Gibbons, Miller, and Cortez-Masto were originally dismissed on screening, but reinstated on reconsideration in light of the Ninth Circuit's decision in *Starr v. Baca*, 633 F.3d 1191 (9th Cir. 2011). (*See* Doc. # 51.)

2

Gregory Martin told Plaintiff he was a licensed physician and that he was going to prescribe Plaintiff medication and treatment for spinal stenosis, umbilical hernia, and ganglion cyst. Plaintiff alleges he subsequently learned that Defendant Martin was not a physician, but a nurse. (Doc. # 25 at 26.) Plaintiff further asserts that he received no medication for these conditions. (*Id.* at 27.)

In Count III, the court found that Plaintiff states a viable retaliation claim against Defendants Saunders and Lyons. (*See* Doc. # 43.) Plaintiff alleges he was subjected to retaliation in violation of his rights under the First Amendment when on March 6, 2009, Defendants Saunders and Lyons, acting under the guise of a shakedown, "trashed" Plaintiff's cell and confiscated and destroyed legal correspondence from Amy Fettig, Staff Counsel with the A.C.L.U. (Doc. # 25 at 29-30.)

Plaintiff has filed a Motion for Preliminary Injunction and Temporary Restraining Order seeking an order that Defendants be prohibited permanently from: (1) making any further attempts on Plaintiff's life; (2) opening, confiscating or stealing Plaintiff's mail related to this case; (3) confiscating, holding, or destroying Plaintiff's legal documents and exhibits. (Docs. # 75, 76 at 2- 3.) Plaintiff also requests an order that the court contact Plaintiff's expert, Dr. Noel. (Docs. # 75, 76 at 3.)

## **II.  LEGAL STANDARD**

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and

3

1 citation omitted). The instant motion requires that the court determine whether Plaintiff
2 has established the following: (1) he is likely to succeed on the merits; (2) he is likely to
3 suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips
4 in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).

5     Before *Winter*, courts in the Ninth Circuit applied an alternative "sliding-scale" test
6 for issuing a preliminary injunction that allowed the movant to offset the weakness of a
7 showing on one factor with the strength of another. *See Alliance for Wild Rockies v.*
8 *Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). In *Winter*, the Supreme Court did not directly
9 address the continued validity of the Ninth Circuit's sliding-scale approach to preliminary
10 injunctions. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting: "[C]ourts have evaluated
11 claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower
12 likelihood of harm when the likelihood of success is very high…This Court has never
13 rejected that formulation, and I do not believe it does so today."); *see also Alliance*, 632
14 F.3d at 1131. Instead, the portion of the sliding-scale test that allowed injunctive relief upon
15 the possibility, as opposed to likelihood, of irreparable injury to the plaintiff, was expressly
16 overruled by *Winter*. *See Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009).
17 The Ninth Circuit has since found that post-*Winter*, this circuit's sliding-scale approach, or
18 "serious questions" test "survives…when applied as part of the four-element *Winter* test."
19 *Alliance*, 632 F.3d at 1131-32. "In other words, 'serious questions going to the merits' and a
20 hardship balance that tips sharply toward the plaintiff can support issuance of an
21 injunction, assuming the other two elements of the *Winter* test are also met." *Id*.

22     An even more stringent standard is applied where mandatory, as opposed to
23 prohibitory preliminary relief is sought. The Ninth Circuit has noted that although the same
24 general principles inform the court's analysis, "[w]here a party seeks mandatory
25 preliminary relief that goes well beyond maintaining the status quo pendente lite, courts
26 should be extremely cautious about issuing a preliminary injunction." *Martin v.*
27 *International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984) (citation omitted).

28

4

1  Thus, an award of mandatory preliminary relief is not to be granted unless both the facts
2  and the law clearly favor the moving party and extreme or very serious damage will result.
3  *See Anderson v. United States*, 612 F.2d 1112, 1115 (9th Cir. 1979) (citations omitted). "[I]n
4  doubtful cases" a mandatory injunction will not issue. *Id*.
5         Finally, the Prison Litigation Reform Act (PLRA) mandates that prisoner litigants
6  must satisfy additional requirements when seeking preliminary injunctive relief against
7  prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no
> further than necessary to correct the harm the court finds
> requires preliminary relief, and be the least intrusive means
> necessary to correct that harm. The court shall give substantial
> weight to any adverse impact on public safety or the operation of
> a criminal justice system caused by the preliminary relief and
> shall respect the principles of comity set out in paragraph (1)(B)
> in tailoring any preliminary relief.

12  18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary
13  injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987,
14  998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity
15  jurisdiction of federal courts and to protect the bargaining power of prison administrators-
16  no longer may courts grant or approve relief that binds prison administrators to do more
17  than the constitutional minimum." *Id*. at 999.
18         The standard for issuing a temporary restraining order is identical to the standard
19  for preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co.,*
20  *Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Moreover, it is appropriate to treat a non-ex
21  parte motion for a temporary restraining order and preliminary injunction as a motion for a
22  preliminary injunction. *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice*
23  *and Procedure* § 2951 (2d ed. 2007) ("When the opposing party actually receives notice of
24  the application for a restraining order, the procedure that is followed does not differ
25  functionally from that on an application for a preliminary injunction and the proceeding is
26  not subject to any special requirements.").
27  ///
28

### III. DISCUSSION

First, with respect to Plaintiff's request for orders precluding Defendants from opening and confiscating his legal mail and documents, the court agrees with Defendants that these requests are not properly brought in this action. Although the Ninth Circuit has not addressed the issue directly, other circuits have repeatedly held that a plaintiff seeking injunctive relief must show "[a] relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994); *accord Little v. Jones*, 607 F.3d 1245, 1250-51 (10th Cir. 2010); *Colvin v. Caruso*, 605 F.3d 282, 299-300 (6th Cir. 2010); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997).

This case involves Plaintiff's allegations of deliberate indifference to serious medical needs and retaliation. (*See* Doc. # 25.) Plaintiff has not been allowed to proceed with a First Amendment claim related to the destruction of legal papers or opening of legal mail. Injunctive relief is used to address issues related to the underlying violations presented in the complaint. Plaintiff is not permitted to file a complaint in federal court and then use that action as a forum to air his unrelated grievances. Such complaints are properly lodged using the prison grievance system and, if they remain unresolved, by filing a new action. Accordingly, Plaintiff's request for injunctive relief in the form of an order precluding Defendants from opening his legal mail and confiscating legal documents should be denied.

Second, to the extent Plaintiff asks the court to contact his expert, such request should also be denied. The court has already denied Plaintiff's motion to appoint Dr. Noel as an expert in this matter. (*See* Doc. # 93.) If Plaintiff wishes to retain Dr. Noel as an expert under the Federal Rules of Civil Procedure, that is his prerogative, but it is not the court's function to contact Dr. Noel.

Finally, the court finds that Plaintiff has not met the burden of establishing he is entitled to injunctive relief with respect to his request for an order that Defendants be precluded from any further attempts on his life.

### a. Likelihood of success on the merits

In order to be granted a preliminary injunction, Plaintiff must show he is likely to succeed on the merits of a claim that would entitle him to the equitable remedy he seeks. *Winter*, 555 U.S. at 20. Plaintiff has not even addressed the likelihood of success on the merits of an Eighth Amendment claim. Rather, he merely concludes that he is entitled to an injunction. Plaintiff has not met his burden as to this prerequisite for injunctive relief.

### b. Irreparable Injury

Plaintiff must demonstrate that irreparable injury is likely in the absence of an injunction. *Winter*, 555 U.S. at 20. "[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury." *Id.* at 22 (citations omitted).

Plaintiff contends that he uncovered information about the alleged murder of inmates housed in ESP's infirmary. (Doc. # 75 at 6.) He represents that Dr. Noel told him he was concerned for Plaintiff's safety. (*Id.* at 9.) He concludes that because he is at ESP, his life is in danger. (*Id.* at 10.) Plaintiff also supports his claim by recounting an incident after a gall bladder surgery, where he contends he was left in a holding cell in a pool of his own blood. (*Id.*)

Plaintiff provides no specific evidence indicating that he is likely to suffer irreparable injury in the absence of injunctive relief. Rather, he merely provides his speculative thoughts regarding medical care at ESP, and hearsay statements of Dr. Noel and unidentified employees at ESP. Moreover, Plaintiff has provided no medical records to substantiate his claim that he was left in a pool of his own blood after a gall bladder surgery. Plaintiff has simply not carried his burden of showing he will suffer irreparable injury.

### c. Balance of hardships and Public Interest

A party seeking injunctive relief "must establish...that the balance of equities tips in his favor." *Winter*, 555 U.S. at 20. "In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id.* at 24 (quotation marks and citation omitted).

Plaintiff failed to address either of these factors.

7

**d. Conclusion**

The prerequisites for injunctive relief not having been met, Plaintiff's request for a temporary restraining order and preliminary injunction should be denied.

Plaintiff's request for a hearing on this motion should also be denied. Pursuant to Local Rule 78-2, "[a]ll motions may, in the Court's discretion, be considered and decided with or without a hearing." Plaintiff has not met his burden of establishing he is entitled to injunctive relief in his points and authorities. Therefore, the court finds that a hearing is not necessary.

## IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **DENYING** Plaintiff's Motion for Preliminary Injunction (Doc. # 75) and Motion for Temporary Restraining Order (Doc. # 76).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen (14) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. App. P., should not be filed until entry of the District Court's judgment.

DATED: March 15, 2012.

WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

8